CARTHAGE MARBLE AND WHITE LIME COMPANY, Respondent, v. MIRIAM B. BAUMAN et al., Appellants.

St. Louis Court of Appeals, November 21, 1893.

1. Mechanics' Liens: AGENCY OF HUSBAND FOR WIFE. The evidence in this cause is considered, and it is *held* to justify the submission to the jury of the issue whether a contract in writing, entered into by a husband in his own name for the erection of a building on land of his wife, had been made by him as agent for the wife, so as to render the land chargeable with a mechanic's lien for materials furnished for the building.

2. ———: ENTIRETY OF JUDGMENT: EFFECT OF APPEAL. The judgment in an action by a subcontractor to enforce a mechanic's lien is an entirety. Accordingly, when in the trial court it is against both the original contractor personally and the claim of lien, the reversal of it by this court on appeal by the plaintiff vacates it altogether, and necessitates a retrial of the cause in both respects.

3. ———: COMPETENCY OF ADMISSION BY ORIGINAL CONTRACTOR. In such an action the admission by the original contractor of the correctness of the account in suit is competent evidence against him, and is therefore properly admitted against the objection of the land owner, though the latter may have its effect limited by instruction

4. Instructions: DEFINITION OF EXPRESSIONS IN COMMON USE. Words in ordinary use, and not intended in any technical sense, may be employed in instructions without definition. Accordingly, an instruction which submits an issue, whether a husband acted as the agent of his wife in contracting for improvements on her land, is not erroneous because it fails to explain what is necessary to the establishment of the agency.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED (*with directions*).

*M. B. Jonas* and *Rassieur & Schnurmacher* for appellants.

(1) A husband has no power, as such, by a building contract to create a liability of his wife's legal estate to a mechanic's lien. Mere knowledge or approbation on her part, or even directions and suggestions as to the work during its progress, do not amount to either an appointment of him as her agent or an adoption or ratification of his contract. Nor will the fact that the building is to be used as a residence for the wife raise the presumption of authority on his part. *Garnett v. Berry,* 3 Mo. App. 197; *Hughes v. Anslyn,* 7 Mo. App. 400; *Barker v. Berry,* 8 Mo. App. 446; *Planing Mill Co. v. Brundage,* 25 Mo. App. 268; *Meyer v. Broadwell,* 83 Mo. 571; *Carthage, etc. Lime Co. v. Bauman,* 44 Mo. App. 386; *Chicago Lumber Co. v. Mahan,* 53 Mo. App. 425; *Conway v. Crook,* 66 Md. 292; *Hughes v. Peters,*

1 Coldw. 71; *Geary v. Hennesy*, 9 Bradw. 18; 2 Jones on Liens, secs. 1263, 1264; *Hoffmann v. McFadden*, 19 S. W. Rep. (Ark.) 753. The evidence in this case having disclosed that the stonework was done under an express written contract between the contractor and the husband, the law will not raise an implied one on the part of the wife. Nor do the facts warrant the inference of a ratification on her part. *Planing Mill Co. v. Brundage* 25 Mo. App. 268; *Carthage, etc. Co. v. Bauman*, 44 Mo. App. 386. (2) The court erred in giving instruction number 1 for the plaintiff without explaining to the jury the facts, which would justify their finding that Mr. Bauman made the contract with Bornschein as the agent of Mrs. Bauman. The court should never submit to the jury a mixed question of law and fact. The law should be declared by the court, and the facts found by the jury. *State to use, etc. v. Rayburn*, 31 Mo. App. 385; *Boogher v. Neece*, 75 Mo. 383; *Jordan v. Hannibal*, 87 Mo. 673. (3) The court erred in permitting plaintiff to read to the jury, as against these defendants, the statement of the contractor that the plaintiff's claim was correct for a balance of $670.34, it appearing that said statement was made long after he had purchased the materials and completed his work. *Grace v. Nesbit*, 109 Mo. 9; *Deardorff v. Everhartt*, 74 Mo. 37; *Philibert v. Schmidt*, 57 Mo. 211.

*Lubke & Muench* for respondent.

(1) Under the mechanic's lien statute of this state, a married woman is free of disability to contract for the improvement of her land. Revised Statutes, 1889, sec. 6726, p. 1577. And she may contract for such improvement through an agent, who may be her husband. *Carthage, etc. Co. v. Bauman*, 44 Mo. App. 386. Although the contract be in writing, and with the husband alone, yet, if it appears that the wife is the real

party in interest for whom, and by whose authority, the improvement is made, the wife's land will be bound. *Fischer v. Anslyn*, 30 Mo. App. 317; *Carthage, etc. Co. v. Bauman*, 44 Mo. App. 386; *Chicago Lumber Co. v. Mahan*, 53 Mo. App. 425. (2) The reception in evidence of the account signed by the original contractor was not prejudicial error. (3) Appellant's criticism of the words "as her agent" written in the first instruction given for respondent is without merit. The question of agency was one of fact to be determined by the jury from the evidence. And the words "as her agent" being in common use, there was no necessity to explain them further to the jury. *Holland v. McCarty*, 24 Mo. App. 113.

BIGGS, J.—The plaintiff seeks to enforce a mechanics' lien against a building and lot belonging to the defendant, Miriam Bauman, who is the wife of her codefendant, Meyer Bauman. This is the second appeal. (44 Mo. App. 386.)

The plaintiff claims to have furnished the stone for building the house in controversy under a contract with one Bornschein. On the first trial the plaintiff was compelled to submit to a nonsuit as to the lien, the court being of the opinion that it had failed to introduce any substantial evidence that the work done by Bornschein was done under a contract with Mrs. Bauman. Judgment, however, was rendered against Bornschein for $449. It appeared inferentially only that the contract with Bornschein was made with Meyer Bauman, but its nature and terms were not established. We reversed the ruling of the court as to the lien, as in our opinion the acts and conduct of Mrs. Bauman, in reference to the construction of the house, were such as to call for some explanation. On a retrial it was developed that the contract with Bornschein was in writing, and was made by Meyer

Bauman in his own name. Under the instructions of the court, the jury found that, in making the contract, Bauman acted as the agent or representative of his wife, and they also found that the plaintiff was entitled to a mechanics' lien on the house and lot for $518.90, and judgment was entered accordingly. The defendants have appealed.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendants asked an instruction of nonsuit upon the theory that the evidence of Bauman's agency was not sufficient to authorize its submission to the jury. The court refused to direct a nonsuit, and of this the defendants chiefly complain.

The defendants by introducing evidence assumed the risk of helping out the plaintiff's case. To that extent it may be said that they waived their demurrer to the plaintiff's evidence. Hence, in determining this assignment, we must look at all of the evidence. *Eswin v. Railroad*, 96 Mo. 290.

The plaintiff's evidence, bearing on the question of agency, was substantially as follows: Joseph Grable, who was the superintendent of the building, testified that Mrs. Bauman was very often at the house while the work was progressing; that she first objected to the windows, alleging that they were too small, and that she wanted larger ones put in, but that, after talking to the architect, she seemed to be satisfied; that she gave orders about the pantry and kitchen; that she ordered certain changes made, and, in that connection, said: "We are paying big money for this, and I want it right."

George Piesch had the contract for painting the house. After testifying that he saw Mrs. Bauman frequently at the building, he said: "She (Mrs. Bauman) gave me directions about painting some

floors and varnishing the floors. * * * Have seen her examining the work. I did extra work through Mrs. Bauman; she gave orders to do it."

W. S. Balsom, a carpenter, said that he worked on the house four or five months, and that during the time he often saw Mrs. Bauman on the premises, and that she frequently had conversations with the architect; that she gave the witness directions about the breakfast rooms and the closets, and that she gave the foreman orders how the shelving in the pantry should be fixed.

J. W. Blaine, who was employed in the building as a painter, said that Mrs. Bauman gave orders about the painting, and that she said "that she wanted a good job done."

On the other hand, Mr. and Mrs. Bauman both testified substantially that in building the house Bauman acted on his own responsibility; that he did not consult his wife, except to submit the plans to her for her inspection; that in paying for the house he drew against his private account; and that Mrs. Bauman was in no way connected with any of the contracts for building the house, nor was she known to any of the contractors.

In view of the fact that the contracts for building the house were in writing and in the name of Mr. Bauman, the alleged acts of the wife concerning the building, if they stood alone, might very well be reconciled with a wifely interest in her husband's affairs. But the plaintiff insists that the cross-examinations of the defendants justify the inference that the house was really paid for with Mrs. Bauman's money. It appears from the testimony of both defendants that in 1876 Mrs. Bauman was the owner of a residence on Pine street; that about that time she sold it for $16,000 cash; that Mr. Bauman used the money in

partly paying for some business property on Olive street, the title to which was taken in his individual name, and is still so held; that in November, 1887, Bauman purchased the lot here in controversy, for which he paid $5,000, taking the title to his wife, and that he afterwards expended $17,000 or $18,000 in making the improvements. While Bauman says that in paying for the lot and house he drew against his private account, which we may assume to be true, yet it is a fair and legitimate inference from his testimony, as well as that of his wife, that the money arising from the sale of the property in 1876 was regarded as belonging to the wife; that Bauman invested it for her benefit; and that in purchasing the lot and in building the house he was refunding to her that money and the reasonable profits arising from its investment. These were the inferences drawn by the trial judge, who is exceedingly careful and prudent, and we do not think that we would be justified in overruling him in this matter. He saw the witnesses and heard them testify, and was in the better position to get at the true facts. With the fact fairly proven that Mrs. Bauman's money paid for the house, her alleged acts of participation and interference in the building of it became quite significant, all of which justified the submission of the question of agency to the jury. We will, therefore, overrule this assignment.

After the stone had been delivered, the plaintiff made out the account therefor, showing a balance due of $670. Bornschein indorsed the account as being correct. Against the objections of the defendant the court permitted the plaintiff to read this paper in evidence.

It seems that on the last trial both parties regarded the contest *solely* between the plaintiff and Mrs. Bauman, and that the sole issue was lien or no lien.

This, we assume, was on the idea that the first appeal and the judgment of reversal therein in nowise affected the judgment against Bornschein. If this were true, the admission of the paper would have been a technical error. *Grace v. Nesbitt*, 109 Mo. 9. But, in our opinion, counsel misconceived the effect of our judgment of reversal. The judgment enforcing a mechanics' lien in favor of a subcontractor is merely incidental to a judgment in his favor against someone standing in a contractual relation with the owner of the property. *Steinkamper v. McManus*, 26 Mo. App. 51. The lien cannot exist and, in the absence of statute, cannot be enforced, apart from such judgment. Therefore, the first appeal brought up for review the entire judgment, and the reversal vacated it as an entirety. When we consider that there can be but one final judgment in the cause (Revised Statutes, 1889, section 2213; *McCord v. McCord*, 77 Mo. 166; *Caulfield v. Farrish*, 24 Mo. App. 110), the conclusion is unavoidable that there could not be one judgment against Bornschein for the debt, and another at a subsequent term enforcing the lien. Again, the statute requires, in such cases, that the judgment enforcing the lien shall be on condition that the judgment for the debt be first made out of the property of the contractor. This conclusively shows that there can be but one judgment.

Our conclusion is that it was necessary on the second trial for the plaintiff to make out its case against Bornschein. Therefore, the stated account was competent evidence against Bornschein, and Mrs. Bauman was entitled by instruction, if she had seen proper to do so, to have had it so limited.

But, even on the theory on which the case was tried, the admission of the paper in evidence was non-prejudicial. If the lien had been adjudged for the balance claimed under the stated account, then there would

have been just grounds for complaint. On the contrary, the finding as to the balance due to the plaintiff from Bornschein was based on the testimony of Bornschein himself, who was introduced as a witness by the defendants. He denied the correctness of the stated account in respect of the prices charged for certain portions of the materials furnished. The finding of the jury was in accordance with his testimony.

At the request of the plaintiff the court instructed the jury that, if they found from the evidence "that defendant Miriam Bauman, by and through her husband, acting at her instance or with her consent and approval *as her agent* and for her benefit, made a contract with Bornschein," etc.

It is urged that it was error for the court to so instruct without explaining to the jury the facts that would justify the finding that Mr. Bauman made the contract with Bornschein *as the agent* of his wife.

This objection is completely answered in the opinion of this court in *Holland v. McCarty*, 24 Mo. App. 112. There the word "authority" was used in an instruction. It was claimed that the meaning of the word ought to have been defined by instructing the jury as to what acts on the part of the defendant would amount to such authority. Judge ROMBAUER, in delivering the opinion of the court, said: "We have repeatedly held that words of the English language in ordinary use, when used in no particular technical sense, need not be explained to the jury. The word authority, in the connection in which it was used, was used as a word having a well-defined meaning in common parlance, and no jury composed of intelligent men (as juries under the provisions of the statute are bound to be) could misunderstand it."

Acting upon the idea that the original judgment against Bornschein was still in force, the judgment

entry was only for the enforcement of the lien. As we have shown, this was a misconception of the *status* of the case. It follows that the judgment entry in this respect is insufficient and erroneous. We will, therefore, reverse the judgment, and remand the cause with directions to the circuit court to enter a judgment as herein indicated as of date of the last judgment entry, viz., a judgment against Bornschein for $511.84, such judgment to be a lien on the property. Costs of this appeal are taxed against the plaintiff. All the judges concur.